Richard C. **KLINE**

v.

**CREATIVE TEXTILES, Inc.**

Civ. No. 8654.

United States District Court
D. Puerto Rico, San Juan Division.

Dec. 7, 1956.

As Amended Feb. 19, 1957.

Cordova & Gonzalez, San Juan, P. R., Morton Amster, New York City, of counsel, for plaintiff.

Hartzell, Fernandez & Novas, San Juan, P. R., Campbell, Brumbaugh, Free & Graves, New York City, James N. Buckner, New York City, of counsel, for defendant.

RUIZ-NAZARIO, District Judge.

This is an action by plaintiff against defendant in which plaintiff charges that defendant has infringed certain letters patent hereinafter more specifically referred to. The defendant denies any infringement and alleges that the patent on which plaintiff bases his complaint is invalid for want of invention and because of public use for more than one year prior to filing of plaintiff's application for the patent in question. The Court, having considered the testimonial and documentary evidence adduced, as well as the devices and exhibits introduced in evidence, and having considered extensive briefs of counsel, on the issues as limited in the Pre-Trial Order of January 11, 1956, entered herein, and being now duly advised in the premises, hereby makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact

1. (a) Plaintiff Richard C. Kline is the owner of U. S. Patent No. 2,600,993, for "Carpet Tufting Machine", issued June 17, 1952, hereinafter referred to as the "Kline Patent".

(b) The carpet tufting machine of the type involved in this action has been used in the making of tufted or hooked rugs for many years and is known in the trade as the Susan Burr rug tufting machine. The "Susan Burr" type is illustrated in Figures 1 and 2 of the drawing in U. S. Patent No. 1,093,-645, granted to Carl Nilsson on April 21, 1914.

In Figures 1 and 2 of the Nilsson drawing, parts

"1 and 2 represent sliding members having integral handle portions 3 and 4 respectively. Member 1 has two metal straps 5 and 6 respectively secured thereto by rivets 7 and spaced apart. These straps are of such dimension that they provide efficient guides for member 2, and the handle portion 4 of mem-

ber 2 is formed with a longitudinal slot 8 to receive the strap 6 when the parts are in one extreme position as indicated in Fig. 1, and it will be understood that the inner wall of this slot 8 limits the extreme movement indicated. Member 2 is provided on its inner face at one end with a recess 9 in which a needle 10 is secured by screws 13. This needle 10 is of channel shape in cross section, and a spring tongue 11 bears at its free end against the inner face of the needle and is confined in the general channel formation of the needle. This spring 11 is movable in a recess 12 in member 1 and at one end is secured by screw 13ᵃ. The spring has a somewhat compound curvature so that it maintains its contact with the needle and serves to compel the members to spread apart when the needle begins a new stroke as is well understood. The needle 10 is provided with an eye 14 through which the strip or cord is passed and a screw eye 15 is screwed into member 2 and acts as a guide for the tape or cord, and also operates in conjunction with my improved adjustable strip 16 to regulate the movement of the members in opposite directions to control the height or depth of the tuft as will now be explained. The strip 16 is provided with a longitudinal series of openings 17 in any of which a set screw 18 may be located and screwed into strap 5 to securely hold the strip 16 at the position of adjustment. One end of the strip 16 is bent back as shown at 19 forming an abutment which engages the screw eye 15 and limits the sliding movement of the parts in one direction. In other words, this abutment 19 strikes the screw eye 15 and limits the movement of the spring tongue 11 beyond the end of the needle, and it is this movement of the spring tongue which controls the height or depth of the tuft."

2. The Kline patent describes and claims a device for making tufted carpets. The device as claimed in the patent consists of a Susan Burr type of hand operated carpet tufting machine to which has been added a tensioning prong or spring mounted on the inside of the needle so as to partially cover the eye of the needle.

3. The tensioning prong mentioned in paragraph (2) above is described in the specifications of the Kline patent (Col. 4, lines 3 to 18) as follows:

"In order to impose an appropriate tensioning on the yarn, during operation of the mechanism, resilient prongs 28, Fig. 5, of a yarn tensioning stamping 29, extend along the grooves between the sidewalls 24a, on the underside of the needles, these prongs being longitudinally adjustable in relation thereto by means of screws, such as 30 passing through elongated apertures as at 31 in the base portion 32 of the yarn tensioning stamping 29. By virtue of this construction and assembly, the effective apertures of the needle holes 26, may be adjusted in accordance with the diameter of the yarn employed, by adjusting the tensioning bars 28 in greater or lesser overlapping relation to the needle holes 26 in the manner indicated at 33."

and at column 5, lines 65 to 70 as follows:

"As above explained in connection with Figs. 5 and 6, the yarn tensioning prongs 28 are adjusted in appropriate overlapping relation to the needle holes 26 to maintain suitable tension on the yearn as it is fed through the needle holes during the tufting operation."

4. Pursuant to Par. 2A of said Pre-Trial Order only claims 3 and 4 of the Kline patent were involved at the trial in this action, inasmuch as they refer to single needle machines and infringement thereof would necessarily imply infringement of claims 1 and 2, which

refer to multiple needle machines. Claims 3 and 4 are as follows:

"3. In a tufting device for producing tufted carpets and the like: a tufting needle having a yarn-receiving hole therein; a thrust member, and means mounting said needle thereon; a yarn tensioning prong mounted on said thrust member in longitudinal alinement with said needle and having its free end adjacent the hole in said needle; and *means for adjustably positioning* said tensioning prong longitudinally of said needle for adjusting the effective aperture of the needle hole.

"4. In a tufting device for producing tufted carpets and the like: a needle thrust bar and a stepper thrust bar mounted in slidable relation to each other for longitudinal displacements thereof along substantially parallel paths: a tufting needle having a yarn-receiving hole therein, and means mounting the same on said needle thrust bar; a yarn-tensioning prong and *means adjustably mounting* the same on said needle thrust bar in alinement with said needle and with the free end adjacent said hole, for adjusting the effective aperture of the needle hole; a stepper prong and *means mounting* the same on said stepper thrust bar, in coacting relation to said needle." (Emphasis supplied.)

5. Plaintiff's patented tufting machine differs from U. S. Patent No. 463,548 issued to Ross on November 17, 1891, and especially from U. S. Patent No. 1,093,645 to Nilsson issued April 21, 1914 in only the following particulars:

(a) it includes a yarn tensioning prong mounted on the needle thrust bar in longitudinal alignment with the needle and having its free end adjacent to the hole in said needle, and

(b) it incorporates *means for adjustably positioning* the tensioning prong longitudinally of the needle for adjust-ing the effective aperture of the needle, or

(c) incorporates *means for adjustably mounting* the tensioning prong on the needle thrust bar in alignment with the needle end with the free end adjacent the hole in the needle, for adjusting the effective aperture of the needle hole.

6. No invention is involved in providing a tufting needle with a yarn tensioning prong.

U. S. Patent No. 604,759 issued May 31, 1898 to Johnson discloses a yarn tensioning spring in a tagging needle.

7. The only feature that distinguishes the Kline patent over the prior art is the adjustability of the tensioning prong. This adjustability feature is an improvement over the prior art as, with an adjustable prong it is unnecessary to have on hand innumerable needles with different sizes of apertures in order to accommodate the different gauges of yarn.

8. The tensioning prong was added to a tufting needle in 1946 by Kline's partner Mr. Lichtig, a witness at the trial, who, finding that the pile of rugs being manufactured in their factory at Carolina, Puerto Rico, was uneven, sought some method of adjusting the aperture of needles for wear caused by friction by the yarn, and improvised a tensioning prong by placing a second stepper inside the needle thrust bar to block the aperture of the needle to accommodate for wear.

9. The partnership of Kline and Lichtig, doing business as Floor Coverings, Inc., used tufting machines incorporating the tensioning prong in commercial production of rugs for some two years prior to the filing date of Kline's application for a patent.

10. A tensioning spring was used by Warren Harpootlian in a tufting machine in 1936 or 1937, and was used by him in the commercial production of rugs in the early Forties.

11. As early as 1927 tufting machines with a tensioning prong were available in Canada.

12. There is nothing novel about adjustability.

13. U. S. Patent No. 1,396,849 to Kirby (for embroidery needle) issued November 15, 1921 discloses an adjustable depth gauge made of relatively stiff spring wire, which traverses one side of the needle adapted to enter adjusting holes for adjustment purposes. As stated in said Patent, Column 1, lines 27 to 31, "A further object is that of combining with art needles of the class described an adjustable tension element for producing more or less tension upon the embroidery thread during the operation."

14. U. S. Patent No. 2,365,013, to Sharkey (Loop-forming needle), issued December 12, 1944, discloses an adjusting screw to contract a sleeve to the extent desired, thus regulating the amount of tension applied on the yarn.

15. Defendant relied on the following patents to show Prior Art:
No. 463,548, to Ross,
No. 1,093,645, to Nilsson,
No. 1,605,711, to Garrett,
No. 2,365,013, to Sharkey.

16. Defendant relied on the following Patents to show Anticipation:
No. 604,759 to Johnson,
No. 1,396,849 to Kirby,
No. 2,365,013 to Sharkey.

17. Of the above patents, the patents of Johnson and Sharkey were cited by the Patent Office Examiner and his allowance of the claims of the Kline patent was a finding on his part that these patents do not disclose a tensioning prong with means of adjustment. With this I do not concur. Johnson provides a tension prong as stated in Finding 6. Sharkey discloses adjustment by screw to regulate the tension applied to the yarn. There is nothing novel about slots receiving screws according to the relative position required, and the difference between Sharkey's method of adjustment and Kline's is simply the difference involved in using equivalent elements, all old and well known, in a different way.

18. The actual tufting needle manufactured and in use by plaintiff Kline, Exhibit 1 Pl., does not have the means for adjustably mounting and positioning the tensioning prong on the needle thrust bar, as set out in Claims 3 and 4 of Kline's patent No. 2,600,993, further described in lines 7 to 19, Col. 4, and as shown in 30 and 31, Figure 5, Sheet 2 thereof. Although the accused device (Exh. 16 Pl.) is an exact copy of said actual tufting needle manufactured and being used by plaintiff Kline, Exh. 1 Plf., it does not infringe Kline's patent No. 2,600,993 because it, like the actual tufting machine manufactured and in use by Kline, Exh. 1 Pl. does not have the means for adjustably mounting or positioning the tensioning prong on the needle thrust bar claimed in the patent, but instead a tensioning prong is mounted in a fixed position in a wooden needle thrust bar and is fastened to such thrust bar by two wood screws, the holes in the tensioning prong through which the wood screws pass are round and of a size just adequate to accommodate the screw; to change the position of the tensioning prong the machine must be dis-assembled, the wood screws must be removed from the tensioning bar and the tensioning prong must then be relocated and remounted; new holes in the wooden thrust bar must be made and in most instances, the old holes filled; and no means are provided to facilitate this change.

19. Plaintiff Kline commenced and prosecuted this action in bad faith, without justification and without any reasonable belief in the merits of his claim since before bringing the action he was fully aware of the construction of defendant's machine and knew that such machine was virtually identical to the machines which had been in public use in his own carpet manufacturing operations for over two years prior to the filing of his patent application and had as its only improvement over the conventional "Susan Burr" machine, a tensioning prong or "second stepper" which he knew was not his own invention.

On the basis of the above findings of fact, the court arrives at the following:

## Conclusions of Law

1. Claims 3 and 4 of the Kline patent involved in this action are invalid in that they do not define a patentable invention or disclose anything that was unknown to the prior art. They were clearly anticipated by Johnson, Kirby and Sharkey and are but familiar applications of mechanical skill respecting adjustability.

2. Claims 3 and 4 of the Kline patent are invalid because of prior public use more than one year before the application of Kline's patent was filed.

3. Claims 3 and 4 of the Kline patent are invalid because they do not define a patentable invention. It is not necessary that the anticipation of a patent be disclosed in a single device. It is sufficient if it appears from several patents. No tufting or other type of needle prior to Kline is an exact duplicate of the Kline device. Nevertheless, an examination of the prior patents leads me to the Conclusion that Claims 3 and 4 of the Kline patent are void for want of invention, and therefore the complaint in this case must be dismissed with costs.

4. Defendant's carpet tufting device does not infringe Kline's patent No. 2,-600,993.

It is so ordered.